[Civ. No. 11759.   First Dist., Div. One.   Apr. 7, 1942.]

BEVERLY BROWN, a Minor, etc., et al., Appellants, v. CITY OF OAKLAND (a Municipal Corporation) et al., Defendants; OAKLAND HIGH SCHOOL DISTRICT et al., Respondents.

Donahue, Richards & Hamlin and A. R. Rowell for Appellants.

Ralph E. Hoyt, District Attorney, Arthur E. Sugden, Deputy District Attorney, Herbert Chamberlin and Weinmann, Quayle & Berry for Respondents.

WARD, J.—This is a personal injury action. Judgment upon a nonsuit was granted in favor of all of the defendants. The appeal is limited to the judgment as its affects Oakland School District of Alameda County, Oakland High School District of Alameda County, Board of Education of the City of Oakland and William J. Parry.

The complaint alleges four causes of action. The first two are based upon the provisions of section 2.801 of the School Code, the others upon the Public Liability Act. Causes one and three pray for damages for an injury to a female minor child, and two and four, for expenses for hospitalization, services of physicians, etc., incurred or to be incurred on behalf of the minor.

Appellants urge that a sufficient case has been proven under section 2.801 of the School Code by showing facts sufficient to charge the school authorities with constructive notice of the dangerous condition of a designated portion of the school ground, and this irrespective of whether or not appellants have shown notice under the Public Liability Act. Upon their theory we will assume for the purpose of the appeal that the causes of action relating to the Public Liability Act become mere surplusage. (*Maede* v. *Oakland High School Dist.*, 212 Cal. 419 [298 Pac. 987]; *Freund* v. *Oakland Bd. of Education*, 28 Cal. App. (2d) 246 [82 P. (2d) 197].)

It is the duty of school authorities to enforce or cause to be enforced rules and regulations in the supervision of pupils on school grounds. (*Underhill* v. *Alameda E. School Dist.*, 133 Cal. App. 733 [24 P. (2d) 849]; *Bellman* v. *San Francisco H. S. Dist.*, 11 Cal. (2d) 576 [81 P. (2d) 894]; *Taylor* v. *Oakland Scavenger Co.*, 17 Cal. (2d) 594 [110 P. (2d) 1044].) School authorities are ordinarily not liable for personal injuries sustained by persons other than pupils arising from the condition of school premises, unless by statute they are

expressly or impliedly made liable. (40 A. L. R. 1091; 24 R. C. L., p. 604, sec. 60.) In California, use of school property is expressly authorized for other than school purposes, including that of recreation. (*Goodman* v. *Board of Education*, 48 Cal. App. (2d) 731 [120 P. (2d) 665]), and school boards are liable as such in the name of the district for judgments against the district based upon injury to persons or property (School Code, sec. 2.801; *Goodman* v. *Pasadena City H. S. Dist.*, 4 Cal. App. (2d) 65 [40 P. (2d) 854]; *Bellman* v. *San Francisco H. S. Dist, supra*) and may insure against liability for damages. (School Code, sec. 2.990.)

In the present case we are confronted with this question: Was the conduct of the minor under the circumstances shown by the evidence negligent, or that of the defendants free from negligence, as matter of law, making proper the judgment of nonsuit, or did it leave these questions of negligence or freedom therefrom as facts to be determined by the jury?

The injured minor was not a pupil at the school on the grounds of which the accident occurred, nor was she injured during school hours. She was upon the premises to view a baseball game. Some time prior to the injury, two sand pits had been installed near the baseball diamond for the athletic use of high school students in "broad jumping." Later, one of the pits was abandoned for such purpose, and part of the sand had been removed. It was in such pit that the injury occurred. The child had strayed away from the immediate presence of those who accompanied her to the game and, as she testified, was playing in the sand pit, "the one with the weeds. . . . The dog came in the sandbox and I put my hand back real fast and I hurt my hand [on] a broken jelly glass . . . in the weeds in the sandbox." The glass or fruit jar was partly covered by the sand.

Prior to the date of the accident visitors at the school grounds had seen children playing in the sand pit, although there is no proof that such fact had actually been called to the attention of the school authorities, or to those who, under their direction, supervised recreational activities under the permissive use granted by the provisions of division 6, part 3, chapters 1 and 2 of the School Code. There is some evidence from which a fact-finding body might conclude that the authorities had received constructive notice that children played in the sand pit, and there is evidence from which an inference could be drawn that foreign matter other than sand was in

fact present in the pit, and that a representative of the school district was aware of such fact, the school custodian in charge of the school grounds, employed by the Board of Education of the City of Oakland, testifying that on different occasions he would examine the box, "kick it [the sand] around to see if I can find anything in there and then I take it out."

Respondents argue that the school district did not "maintain" a sandbox for children at large to play in. While the primary purpose of the box was not for the pleasure of children at large, under all of the circumstances on this particular afternoon the public was invited on the grounds to witness a ball game. It may be assumed that parts of the school ground adjacent to the baseball diamond would be used by the spectators. If a child puts equipment to a use not contemplated or intended by those in charge, and the equipment is of such a nature that a reasonably prudent child would know that the equipment was not intended for that purpose, no liability can attach to the school authorities for injuries received while the equipment is put to such unauthorized use. But where, as here, the sand pit was constructed for one purpose—as a broad-jumping pit, but it is of such a nature that it may conceivably be used for another purpose—as a sandbox—then it becomes a question of fact as to whether a reasonably prudent child would put the equipment to the use to which it was put. If the jury finds in favor of the plaintiffs on this issue, the invitation to attend the ball game included an invitation to use the equipment in close proximity thereto. It becomes a question of fact as to whether this equipment was within the extent of the invitation. Whether the sandbox was in close proximity to the portion of the ground used for recreational activities; whether a duty devolved upon the school authorities to use ordinary care in maintaining such portion of the ground as was in close proximity to the baseball diamond; whether defendants should have anticipated that children would play in the box, and whether under all the circumstances the box was adequately inspected, are questions of fact to be determined without resort herein to the doctrine of res ipsa loquitur.

In *Young* v. *Gautier*, 28 Cal. App. (2d) 494 [82 P. (2d) 959], the accident would not have occurred had the owner and operator of a swimming pool used proper care. In the present case the pit was not specially used as a play box

for children. Whether defendants should have anticipated its use by them was a question of fact to be first determined, which prevents the application of the doctrine. The accident here might have been due to several unexplained causes which the defendants could not reasonably have anticipated and for which they would therefore not be responsible. (*Olson* v. *Whitthorne & Swan,* 203 Cal. 206 [263 Pac. 518, 58 A. L. R. 129].) In the Young case, the responsibility for the maintenance of the pool was definitely fixed; in the present, responsibility for the maintenance of the sand pit is debatable. (*Hubbert* v. *Axtec Brewing Co.,* 26 Cal. App. (2d) 664 [80 P. (2d) 185, 1016]; *Gibson* v. *County of Mendocino,* 16 Cal. (2d) 80 [105 P. (2d) 105]; *Castro* v. *Sutter Creek U. H. S. Dist.,* 25 Cal. App. (2d) 372 [77 P. (2d) 509].) ■ Defendants may be liable for negligence for failure to reasonably anticipate the use of such equipment by children. (*Anstead* v. *Pacific Gas & Elec. Co.,* 203 Cal. 634 [265 Pac. 487].) In *Woodman* v. *Hemet Union H. S. Dist.,* 136 Cal. App. 544 [29 P. (2d) 257], relied upon by respondents, school property was used by an employee for his own business in no way connected with the school district, without even constructive notice to the school authorities. The court applied the familiar rule that the employee in the authorized and usual use of property must be acting within the scope of his employment. The facts are so dissimilar from those of the present case as to be of no assistance to respondents.

■ Whether the evidence would support a conclusion that the minor plaintiff was injured by a dangerous condition which was obvious, or should have been observed by a child of her years, is a question of fact.

■ One further question requires mention. The school custodian testified that he never happened "to see any cans or glass or rubbish around these sand pits at any time." Plaintiffs sought to impeach this testimony by proof that on the day following the accident another witness had observed and picked up pieces of broken glass within an area of five feet of the sandbox. Technically this would not impeach a statement made by the custodian that he never saw glass, etc., around the sand pit. Based upon the evidence as it appears in the record, the ruling sustaining the objection to the introduction of such evidence was correct.

Bearing in mind the above evidence, and the principles set forth in *Slater* v. *Shell Oil Company,* 39 Cal. App. (2d) 535,

539 [103 P. (2d) 1043], the judgment should be and is hereby reversed.

Peters, P. J., and Knight, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 1, 1942.