[No. B153691. Second Dist., Div. Three. Dec. 13, 2002.]

ROSA RAMIREZ, Plaintiff and Appellant, v.
LONG BEACH UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

**COUNSEL**

Law Offices of Sayre & Chavez, Federico C. Sayre and Miguel G. Caballero for Plaintiff and Appellant.

Thomas Law Firm, Allen L. Thomas and Lori D. Barcelona for Defendant and Respondent.

**OPINION**

**ALDRICH, J.**—Plaintiff and appellant Rosa Ramirez (plaintiff) brought this action against defendant and respondent Long Beach Unified School District (School District) contending the School District was liable for the death of her son, Thomas Ramirez (Thomas). Plaintiff appeals from the judgment entered upon the sustaining of a demurrer without leave to amend. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.**

In 2000, Thomas was a student at Reid High School, a School District educational institution. Thomas was 15 years of age and a high-achieving student who sought to improve his education. He came from a low-income family.

Thomas was advised by the School District staff and administration to apply to participate in R.M. Pyles Camp (the Camp) located in Sequoia National Forest. The Camp was a nonprofit organization providing a program for low-income, at risk youths. It was designed to provide the youths leadership skills. Carl A. Cohn, superintendent of the School District, was a board member of the Camp. The School District, through its administrators and faculty, identified potential candidates for the Camp, advertised, recruited, encouraged, and convinced students and parents to participate in the program. On behalf of the Camp, the School District provided participants and their parents with applications and other documentation, such as medical forms. The School District opened its campuses to host meetings with parents and the Camp. The School District personnel were present at such meetings, promoted the program, and made statements about its safety.

---

*Following the usual rules on appeal, we treat as true the facts alleged in the pertinent complaint. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300-301 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

School District's staff and administrators assisted Thomas in applying for the Camp. They convinced Thomas that the Camp would be beneficial to him. School District officials presented plaintiff and Thomas with a pamphlet and videotape about the Camp and represented that the Camp was fun, safe, and a maturing experience. Plaintiff believed the School District and the Camp were partners in a joint venture in the Camp activities.

On August 3, 2000, the School District hosted the Camp on a School District campus. At that event, plaintiff inquired about the safety of the program and demanded information regarding supervision and training of the Camp personnel. Camp representatives described its activities. Camp personnel said there would be more than one trained adult supervising the children. School District personnel were present when Camp officials told plaintiff that the Camp was safe. School District officials told plaintiff and Thomas that the Camp was safe, the counselors were trained, and there would be more than one counselor supervising the children. School District officials told plaintiff that she "did not have to worry, everything would be O.K. because the camp was safe." A School District employee stated, "Don't worry, we are going to take care of them and I will give them a ride to the camp bus on the 19th of August."

Plaintiff had no experience upon which to evaluate the representations of Camp employees. Plaintiff valued the opinion and advice of School District personnel about her son's education and well-being. Based upon the representations of the School District administrators, plaintiff was convinced the Camp was safe. Plaintiff gave her consent for Thomas and his brother, Andres, to attend the Camp.

The Camp was not safe. School District officials knew it was not safe. Part of the program involved a five-day backpacking trip on rugged terrain in a remote part of Sequoia National Forest, 18 miles from the nearest town. This area could only be reached by foot or helicopter. The backpacking trip was conducted by a single camp counselor with no direct supervision or assistance. For emergencies, the counselor carried only a walkie-talkie. Counselors were free to encourage swimming, even though there were no life jackets, swimming gear, lifeguard, or life saving equipment, and the swim would occur in high-altitude mountain lakes. The counselors were not trained in life saving techniques or as lifeguards and the Camp did not test the swimming abilities of the youths. Had plaintiff known about the lack of safety at the Camp, she would not have consented to allowing her sons to participate in the program. The School District did not reveal these dangers to plaintiff or to other parents because to do so would discourage participation in the program.

On August 19, 2000, the School District provided transportation for Thomas and Andres from their home to Reid High School so they could catch a bus to the Camp.

On August 23, 2000, during the backpacking part of the Camp program, Thomas and seven other boys were encouraged to swim in Little Kern Lake without life jackets or other emergency equipment. There was only one counselor present. Thomas drowned due to the lack of safety procedures at the Camp.

2. *Procedure.*

Plaintiff filed a civil complaint against the School District in October 2000.[2]

The School District successfully demurred to the original and first amended complaint. On May 22, 2001, plaintiff filed a second amended complaint. The complaint alleged causes of action for (1) wrongful death, (2) negligence, (3) negligent misrepresentation, (4) intentional misrepresentation, and (5) negligent hiring and/or supervision and/or training. The School District demurred.

The trial court sustained the demurrer without leave to amend. An order of dismissal was filed, and a judgment entered. Plaintiff appealed.

DISCUSSION

1. *Standard of review—demurrer.*

We independently review the complaint to determine if the trial court erred in sustaining a demurrer. (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 321 [102 Cal.Rptr.2d 13].) " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. Accordingly we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. [Citations.] We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' [Citation.]" (*People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at pp. 300-301.)

---

[2]Thomas's father, Rodrigo Ramirez, was also a named plaintiff. He has withdrawn as a party and he is not a party on appeal.

## 2. *The School District is immune pursuant to Education Code section 44808.*

Plaintiff contends the School District is liable pursuant to the exceptions delineated in Education Code section 44808. This contention is not persuasive.

■ "A duty is owed by a school district to protect its students by virtue of the special relationship that is created." (*Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 723 [230 Cal.Rptr. 823].) However, this relationship, by itself, does not create liability. Tort liability for governmental entities is based upon statute. (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522].)

Education Code section 44808 provides that school districts are not responsible for the safety of pupils when the pupils are not on school property. The statute also provides limited exceptions.

Education Code section 44808 reads in full: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

■ Thus, this section "(formerly section 13557.5) renders a school district not 'responsible or in any way liable for the . . . safety of any pupil . . . at any time when such pupil is not on school property' unless the district has 'undertaken to provide transportation for such pupil to and from the school premises,' 'undertaken a school-sponsored activity off the premises,' 'otherwise specifically assumed such responsibility or liability' or 'failed to exercise reasonable care under the circumstances.' Liability for 'such a specific undertaking' exists where a pupil 'is or should be under the immediate and direct supervision of an employee' of the district. In essence, the section grants a district immunity unless a student was (or should have

been) directly supervised during a specified undertaking. The language 'failed to exercise reasonable care under the circumstances,' while set off by an 'or' as if meant to be a self-sufficient basis for liability, has correctly been construed as requiring such failure *during* one of the mentioned 'undertakings.' To construe it as an independent basis for liability would be to say, absurdly: A district is never liable in negligence unless it acts negligently. Also, the breach must be of a duty, a duty created through one of the undertakings. [Citation.] 'The "reasonable care" phrase enunciates a standard of care and as such cannot exist in a vacuum; in the absence of a duty to which it applies, the phrase is meaningless.' [Citation].)" (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 129 [65 Cal.Rptr.2d 280, 68 A.L.R.5th 787], fn. omitted, citing *Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 47-48 [242 Cal.Rptr. 752]; accord, *Castro v. Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232, 235-236 [126 Cal.Rptr. 537],[3] distinguished in *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 518, fn. 3 [150 Cal.Rptr. 1, 585 P.2d 851].)

"In essence, the section grants a district immunity unless a student was (or should have been) directly supervised during a specified undertaking." (*Wolfe v. Dublin Unified School Dist., supra,* 56 Cal.App.4th at p. 129.)[4]

Here, the parties agree that when Thomas was injured he was not on school property. The parties disagree, however, as to whether one of the exceptions in Education Code section 44808 imposes liability. They disagree as to whether (1) the Camp was a school-sponsored activity, (2) whether Thomas received transportation to and from the school premises, and (3) whether the School District assumed responsibility for Thomas's participation in the Camp.

We quickly dispense with any possible suggestion that Thomas was involved in a school-sponsored activity. A "school-sponsored activity . . . is

---

[3]*Castro v. Los Angeles Bd. of Education, supra,* 54 Cal.App.3d 232 construed former Education Code section 13557.5.

[4]A more narrowly drawn immunity is contained in Education Code section 35330. This section provides that persons while on a "field trip[] or excursion[] in connection with courses of instruction or school-related social, educational, cultural, athletic, or school band activities . . . [¶] . . . [¶] . . . shall be deemed to have waived all claims against the district or the State of California for injury, accident, illness, or death occurring during or by reason of the field trip or excursion." " 'Field trip' is defined as a visit made by students and usually a teacher for purposes of first hand observation (as to a factory, farm, clinic, museum). 'Excursion' means a journey chiefly for recreation, a usual brief pleasure trip, departure from a direct or proper course, or deviation from a definite path." (*Castro v. Los Angeles Bd. of Education, supra,* 54 Cal.App.3d at p. 236, fn. 1.) "[A] field trip or excursion is simply a narrowly defined type of the more broadly defined school-sponsored activity. [Citations.]" (*Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 827-828 [90 Cal.Rptr.2d 709].)

defined as an activity 'that requires attendance and for which attendance credit may be given.' [Citation.]" (*Myricks v. Lynwood Unified School Dist.* (1999) 74 Cal.App.4th 231, 239 [87 Cal.Rptr.2d 734]; *Wolfe v. Dublin Unified School Dist., supra,* 56 Cal.App.4th at p. 132; *Castro v. Los Angeles Bd. of Education, supra,* 54 Cal.App.3d at p. 236.) There are no facts to indicate Thomas was required to attend, or received credit for, taking part in the Camp program.

Further, the School District did not furnish transportation to and from school premises. Although the School District provided transportation from plaintiff's home to Reid High School, there are no facts showing that the School District furnished transportation to the Camp. (Cf. *Farley v. El Tejon Unified School Dist.* (1990) 225 Cal.App.3d 371, 376 [274 Cal.Rptr. 780].)

■ Thus, we turn to the third "undertaking," i.e., whether the School District "otherwise assumed" responsibility or liability for Thomas's actions while at the Camp. There are no facts indicating the School District indicated, in any fashion, that while Thomas was at the Camp, the School District would be responsible for him. There are no facts that while at the Camp, Thomas was, should have been, or was expected to have been, under the immediate and direct supervision of School District employees. There are no allegations that the School District employed, trained, or supervised the counselors or formulated the Camp program. The School District did not assume responsibility for Thomas while he was participating in the Camp's program.

Plaintiff argues that the School District assumed responsibility for Thomas's participation in the Camp by agreeing to identify, recruit and advertise the Camp to disadvantaged, at risk youths on its campuses, and by promoting and encouraging student participation. However, even if the School District encouraged "participation in the Camp program" it did not assume responsibility for its activities.

Education Code section 44808's immunity was intended to impose liability on schools districts for a student's injury occurring off campus when the student is involved in activities supervised or undertaken by the school. Thomas was involved in an activity not undertaken by the School District. The School District did not supervise the activities of the Camp.

Plaintiff points to *Hoyem v. Manhattan Beach City Sch. Dist., supra,* 22 Cal.3d 508, to note that school districts may be liable when injury to a student occurs off campus. However, the facts in *Hoyem* make it distinguishable. *Hoyem* involved injury to a student who was off campus during school

hours without permission due to negligent on-campus supervision by school personnel. (*Id.* at pp. 511-512.) It was the negligent supervision that resulted in liability. (Accord, *Perna v. Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292 [192 Cal.Rptr. 10] [school district's failure to supervise students on campus resulted in their leaving campus when there were no crossing guards; students injured off campus when struck by vehicle as they crossed street]; *Calandri v. Ione Unified School Dist.* (1963) 219 Cal.App.2d 542 [33 Cal.Rptr. 333] [failure to instruct and supervise student in making toy cannon led to injuries off campus].) Here, the School District was not negligent in supervising the students.

Plaintiff also points to *Goodman v. Pasadena City H. S. Dist.* (1935) 4 Cal.App.2d 65 [40 P.2d 854] and *Taylor v. Oakland Scavenger Co.* (1941) 17 Cal.2d 594 [110 P.2d 1044] in support of her theory that school districts may be liable if it is proven "either the existence of a danger known to the authorities who neglected to guard the pupils against it or that there was an unknown peril which by the exercise of ordinary care under the same circumstances a reasonably prudent person would have discovered." However, both cases are distinguishable and neither stand for the general proposition asserted.

*Goodman v. Pasadena City H. S. Dist., supra,* 4 Cal.App.2d 65, was decided in 1935. In *Goodman,* a student was hit in the eye by a metal fragment in mechanics class. The student alleged the teacher failed to require the pupils to wear safety goggles. The judgment in the student's favor was reversed because the teacher could not have known that aluminum would shatter when pounded, causing a fragment to fly across the classroom.

In *Taylor v. Oakland Scavenger Co., supra,* 17 Cal.2d 594, a student was running to an athletic field required for her physical education class. She was hit by a truck as she ran in a passageway between the main building and the gymnasium. Judgment against the School District was affirmed because, among other reasons, the student was under the supervision of school employees.

Plaintiff contends the School District could be liable because it has a duty to investigate the programs it recommends and to warn of possible dangers associated therewith. Plaintiff cites *Calandri v. Ione Unified School District, supra,* 219 Cal.App.2d 542 (toy cannon), for this proposition. However, the scope of permissible liability under Education Code section 44808 is limited—liability is only imposed when the activity is undertaken by the School District. School districts are not responsible for the activities of organizations, such as scouts, and the Camp, unless they are supervised or controlled by the school districts.

Pursuant to Education Code section 44808, the School District is immune.

3. *The other arguments presented by plaintiff are not persuasive.*

a. *Plaintiff cannot state a cause of action for negligent or intentional misrepresentation.*

■ Plaintiff contends she has stated negligent and intentional misrepresentation causes of action. This contention is not persuasive.

In *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066 [60 Cal.Rptr.2d 263, 929 P.2d 582, 68 A.L.R.5th 719], a student allegedly was sexually assaulted by an administrator. The student was permitted to sue the administrator's former employers for fraud and negligent misrepresentation. The former employers had given the administrator positive recommendations even though they had known the administrator had assaulted others. In reaching its conclusion, the Supreme Court relied upon sections 310 and 311 of the Restatement Second of Torts. These sections articulate fraud and negligent misrepresentation theories when an actor makes a misrepresentation and physical harm results to the plaintiff from an act done by a third person.[5]

Relying upon *Randi W.* and sections 310 and 311 of the Restatement Second of Torts, plaintiff argues she has stated causes of action for fraud (intentional misrepresentation) and negligent misrepresentation. This argument is not persuasive.

Education Code section 44808 states that school districts are not liable for the safety of pupils off campus, unless the exceptions apply. Section 44808 does not discuss its immunity by referring to certain classifications of torts. Plaintiff may not circumvent section 44808's immunity by pleading misrepresentation theories rather than negligence ones.

---

[5]Section 310 of the Restatement Second of Torts involves intentional conduct. It provides that "[a]n actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor [¶] (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and [¶] (b) knows [¶] (i) that the statement is false, or [¶] (ii) that he has not the knowledge which he professes."

Section 311 of the Restatement Second of Torts involves negligent conduct. It provides that: "(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results [¶] (a) to the other, or [¶] (b) to such third persons as the actor should expect to be put in peril by the action taken. [¶] (2) Such negligence may consist of failure to exercise reasonable care [¶] (a) in ascertaining the accuracy of the information, or [¶] (b) in the manner in which it is communicated."

Plaintiff cannot state intentional or negligent misrepresentation causes of action.

 b. *Plaintiff cannot state a cause of action for negligent hiring or negligent supervision.*

Citing *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848 [19 Cal.Rptr.2d 671] (student molested by teacher) plaintiff contends she stated a cause of action for negligent hiring and negligent supervision. This contention is unpersuasive as there are no facts to allege the School District hired or supervised the Camp counselor.

 c. *There was no joint venture or joint adventure.*

 Plaintiff contends that the School District is liable as a joint venturer or joint adventurer. This contention is not persuasive.

 A joint venture is defined as an undertaking by two or more persons, or entities, jointly to carry out a single business enterprise for profit. (*580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 15 [272 Cal.Rptr. 227]; *Connor v. Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 863 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].) It requires an agreement under which the parties have (1) a joint interest in a common business, (2) an understanding that profits and losses will be shared, and (3) a right to joint control. (*Connor v. Great Western Sav. & Loan Assn., supra,* at p. 863; *580 Folsom Associates v. Prometheus Development Co., supra,* at pp. 15-16.)

 The facts before us do not involve a for profit enterprise. There was no joint venture.

Plaintiff suggests that even if the Camp was not a "for profit enterprise," the School District was liable because it participated in a "joint adventure" in a nonprofit undertaking for the mutual benefit or pleasure of the parties. For this proposition, plaintiff cites *Shook v. Beals* (1950) 96 Cal.App.2d 963 [217 P.2d 56, 18 A.L.R.2d 919]. In *Shook,* the defendants were sued under joint venture, joint enterprise, or joint adventure theories. *Shook* stated that some authorities hold that the later theory "applies to undertakings for the mutual benefit or pleasure of the parties. [Citations.]" (*Id.* at p. 968.) In *Shook,* the defendants were collectively liable for damage to a plane they had leased for a fishing trip. Liability was imposed because the defendants jointly paid and hired the plane and each had the right to control it.

Here, there are no facts demonstrating the School District had any right to control the Camp, its employees, or its counselors. (Cf. *Mann v. Nutrilite,*

*Inc.* (1955) 136 Cal.App.2d 729 [289 P.2d 282] [girl's softball team sponsored and received contributions from corporation and foundation; no showing entities had right to control activities].)

The School District and the Camp were not participants in a joint venture or a joint adventure.

### d. *Plaintiff's procedural argument is not persuasive.*

In sustaining the demurrer to the first amended complaint with leave to amend, the trial court stated that the complaint lacked allegations relating to the School District's knowledge of the lack of safety equipment. Plaintiff states this perceived deficiency was corrected by the filing of the second amended complaint. When the trial court ruled on the demurrer to the second amended complaint, it did so on the basis that the School District had not assumed responsibility for the Camp's activities.

Plaintiff argues that her second amended complaint addressed the court's concerns regarding knowledge of the lack of safety equipment and it was unfair for the trial court to use a different reason to rule on the demurrer to the second amended complaint. Plaintiff suggests this unfairness should result in reversal. Plaintiff's argument is not persuasive.

The reasons articulated by the trial court for its rulings do not control the outcome. Plaintiff does not suggest how the complaint can be amended to correct the deficiencies discussed above. Rather, she admits that she believes that the complaint "thoroughly alleged facts demonstrating that the . . . school district[] assumed responsibility for the decedent by failing to exercise reasonable care under the circumstances pursuant to California Education Code [section] 44808."

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendant and respondent Long Beach Unified School District (School District).

Croskey, Acting P. J., and Kitching, J., concurred.